# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**TAMMY R. CHAMBERS,**
**Claimant Below, Petitioner**

**FILED**
**March 24, 2025**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-330**        (JCN: 2023022953)

**TRINITY HEALTHCARE SERVICES, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Tammy R. Chambers appeals the July 26, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Trinity Healthcare Services, Inc. ("Trinity") filed a response.[1] Ms. Chambers did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which rejected the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On or about May 10, 2023, while employed by Trinity, Ms. Chambers alleges that she suffered a steam burn injury to her face, neck, and chest. Ms. Chambers was seen at the Emergency Department of Tug Valley ARH on May 14, 2023. At the emergency room, Ms. Chambers complained of a steam burn injury to her right eye and right cheek occurring two days prior. The attending physician stated that the injury occurred at home and assessed a facial burn. Ms. Chambers was given a work excuse from May 14, 2023, to May 18, 2023. Ms. Chambers received a second work excuse that indicated she could return to work on May 29, 2023.

Ms. Chambers was seen by Steven Wilson, O.D., on May 22, 2023. Ms. Chambers reported that steam burned her face. The diagnosis was ulcerative blepharitis, right eye and lids; ulcerative blepharitis, left eye and lids; and other conjunctivitis. Ms. Chambers was admitted to Tug Valley ARH on May 24, 2023. Ms. Chambers presented to the Emergency Department with complaints of burning of the skin of the chest wall and neck. Ms.

---

[1] Ms. Chambers is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. Trinity is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

1

Chambers reported that she was cooking at a nursing home about 12 days ago when she got burned by steam. Mansoor Mahmood, M.D., assessed Ms. Chambers with cellulitis of chest wall, acute; hypoxia, acute; hyponatremia, acute; elevated d-dimer, acute; cellulitis, acute; first degree burn injury, acute; and hypokalemia, acute. On May 26, 2023, Ms. Chambers was discharged.

On May 24, 2023, Ms. Chambers underwent an x-ray of the chest, revealing discoid atelectasis in the lung bases. Ms. Chambers underwent a CT scan of the thorax dated May 24, 2023, revealing no pulmonary embolus; multifocal areas of atelectasis suspected mild nonspecific enlargement of the right hilar node; and subcutaneous edema left-sided neck and extending into the anterior left chest wall.

Ms. Chambers followed up with Dr. Mahmood on June 1, 2023. The assessment was other specified hypothyroidism; hypomagnesemia; anxiety; burn, any degree, involving 10%-19% of body surface; partial thickness burns of neck; partial thickness burn of the chest wall; acute pain; and cervical lymphadenopathy. Ms. Chambers was given a work excuse taking her off work until July 3, 2023.

On June 13, 2023, Ms. Chambers was seen by Ashok Patnaik, M.D. Ms. Chambers reported chest pain, dyspnea, and palpitations. The assessment was chest pain, resolved; shortness of breath, chronic; bradycardia, chronic; palpitation, chronic; hypotension, acute; pulmonary HTN, chronic; valvular regurgitation, chronic; edema of both lower extremities; hyperlipidemia, chronic; hypothyroidism, chronic; COPD, chronic; renal insufficiency, acute; and hospital discharge follow-up.

The claim administrator issued an order dated June 20, 2023, rejecting the claim because Ms. Chambers did not give immediate notice of the injury, second degree burns would have required immediate medical attention, and inconsistencies in Ms. Chambers' statements. Ms. Chambers protested this order.

Ms. Chambers submitted an Employees' and Physicians' Report of Occupational Injury or Disease dated June 29, 2023. Ms. Chambers alleged that she suffered injuries to her face, neck, chest, and eyes on May 12, 2023, when she opened oven doors and hot steam came out and hit her. Dr. Mahmood signed the physician's section and reported that Ms. Chambers sustained burns to her chest wall, neck, and face as a direct result of an occupational injury.

Ms. Chambers was deposed on January 9, 2024, and she testified that the injury occurred on May 10, 2023, and that she went to the emergency room on May 12, 2023. Ms. Chambers further testified that she was getting a pan ready to put meat in the oven and when she opened the oven doors, steam rolled out onto her. Ms. Chambers stated that she did not feel pain at the time this happened. Ms. Chambers testified that she told a coworker

what happened, but she did not tell a supervisor. Ms. Chambers stated that when she went home there was a red spot on her jaw-line, and the next day her cheek was red, and the burn got progressively worse and spread to her chest over the next few days.

Christopher Martin, M.D., authored a Claimant File Review report dated March 26, 2024. Dr. Martin noted that the medical report dated May 14, 2023, described a burn that occurred two days prior at home and that this contradicted Ms. Chambers' later allegation of a work-related steam burn on May 10. Dr. Martin opined that there was no plausible medical explanation to connect steam burns said to have occurred at work on May 10, 2023, with a medical assessment on May 14, 2023, documenting mild first-degree burns localized to the right cheek and a later medical assessment on May 24, 2023, documenting 10-19% of body surface with less than 10% third degree burns. Dr. Martin indicated that the burns affecting Ms. Chambers' left ear, neck, and chest wall would have caused obvious abnormalities that would have been seen on the May 14, 2023, examination. He opined that there was no medical basis to support severe burns not becoming apparent until a lag of more than four days after the injury occurred.

On July 26, 2024, the Board affirmed the claim administrator's order rejecting the claim. The Board found that Ms. Chambers was not credible, and she had failed to establish that she suffered a discrete new injury in the course of and resulting from her employment. Ms. Chambers now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Ms. Chambers argues that medical records establish that she sustained a burn injury on or around May 10-12, 2023. Ms. Chambers further argues that there was nothing in the medical records that refuted her reported mechanism or time of injury, nor did any evidence directly refute that the injury occurred at work. Finally, Ms. Chambers argues that her medical providers explained that steam burns form differently than regular surface burns since the steam is absorbed into the skin and then has to make its way back out, which validates her statements regarding her injury.

"'In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment.' Syl. pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970)." Syl. Pt. 1, *Sansom v. Workers' Comp. Comm'r*, 176 W. Va. 545, 346 S.E.2d 63 (1986).

Here, the Board determined that Ms. Chambers was not credible because she failed to immediately report the injury and seek medical treatment; the medical report dated May 14, 2023, indicates that Ms. Chambers was injured at home; Ms. Chambers delayed filing a claim application until June 29, 2023; and there were inconsistencies in Ms. Chambers testimony. Further, the Board noted that Dr. Martin was the only medical provider who provided a detailed analysis regarding the causation of Ms. Chambers' medical conditions, and he found no plausible medical explanation to support a finding that steam burns on May 10, 2023, caused Ms. Chambers' medical conditions.

Upon review, we conclude that the Board was not clearly wrong in finding that Ms. Chambers failed to establish that she suffered an injury in the course of and resulting from her employment. The Board specifically found that Ms. Chambers was not credible, and we will defer to that determination. *See Martin v. Randolph Cnty Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . .").

Further, as the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's orders which rejected the claim.

Accordingly, we affirm the Board's July 26, 2024, order.

Affirmed.

4

**ISSUED:**  March 24, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White